IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHELLE COLLEEN CASSENS,

                    Plaintiff,

    v.                                                                          OPINION and ORDER

ANDREW SAUL,                                                          19-cv-912-jdp
Commissioner of the Social Security Administration,

                    Defendant.

---

Plaintiff Michelle Colleen Cassens seeks judicial review of a final decision of defendant Andrew Saul, Commissioner of the Social Security Administration, finding Cassens not disabled within the meaning of the Social Security Act. Cassens contends that the administrative law judge (ALJ), Deborah E. Ellis, erred by failing to adequately consider the opinions of the medical experts on issues related to Cassens's mental limitations.

The court is not persuaded that the ALJ erred, so it will affirm the commissioner's decision. The oral argument scheduled for June 25, 2020, is canceled.

ANALYSIS

Cassens seeks benefits for disability beginning in July 2015, when Cassens was 49 years old. R. 139.[1] In her October 2018 decision, the ALJ found that Cassens suffered from anxiety and an affective disorder, which both parties and the ALJ assume is depression. R. 21.[2] In light

---

[1] Record cites are to the administrative transcript, located at Dkt. 8.

[2] The ALJ also found that Cassens suffered from several physical impairments, but those aren't relevant to the issues on appeal.

of these impairments, the ALJ included the following restrictions related to mental limitations in the residual functional capacity assessment (RFC): she is limited to simple and routine work with minimal responsibilities, infrequent changes in routine, and occasional interaction with the public; and she would be off task about ten percent of an eight-hour work day. R. 24. Relying on the testimony of a vocational expert, the ALJ found that Cassens is capable of performing past relevant work as a cashier as actually performed. R. 22.

The case is now before this court to determine whether the ALJ's decision applies the correct legal standards and is supported by "substantial evidence," *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020), which means that the court looks to the administrative law record and asks "whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The threshold for sufficiency "is not high"; the substantial evidence standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Cassens challenges the ALJ's handling of the opinions of the mental health experts: (1) Cynthia White, a psychiatrist who treated Cassens for a few months in late 2017 and early 2018; (2) Sandra Frodin, a psychologist who conducted a mental health examination of Cassens in May 2016; and (3) Erica Gilyot-Montgomery and Soumya Palreddy, state agency psychologists who conducted record reviews in June 2016 and November 2016, respectively. The ALJ largely rejected the opinions of White and Frodin in favor of the opinions of the state agency psychologists, especially Palreddy.

## A.  Treating psychiatrist

White found that Cassens was "markedly limited" in most areas of mental functioning and "moderately limited" in others. R. 852–53. The ALJ gave "little" weight to White's opinion

for three reasons: (1) White wasn't familiar with the Social Security regulations; (2) White didn't explain her findings, relying instead on checkboxes; and (3) White's opinion wasn't consistent with evidence showing that Cassens's symptoms "improve with conservative treatment such that they never reached nor maintained a level of disabling." R. 32. Cassens challenges each of these reasons.

### 1.  Familiarity with Social Security regulations

Cassens says that Whites's opinion did not require familiarity with Social Security regulations, so the ALJ should not have considered that issue. But White used the same grading system as the Social Security regulations when she found that Cassens suffers from "moderate" and "marked" limitations. White also found that Cassen's limitations "meet or equal [a] listing in the P.O.M.S. [Program Operations Systems Manual,]" R. 854, which also suggests that she was invoking Social Security standards. Under these circumstances, it makes sense for the ALJ to consider whether White was familiar with the standards she was invoking. *See* 20 C.F.R. § 404.1527(c)(6) ("When we consider how much weight to give to a medical opinion, we will also consider . . . the amount of understanding of our disability programs and their evidentiary requirements that a medical source has.").

### 2.  Failure to explain findings

Cassens acknowledges that a check-box form is "weak evidence" by itself, but "the form takes on greater significance when it is supported by medical records." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). Cassens cites a handful of White's treatment records, but she doesn't explain how any of them support White's opinion. Those records do show that Cassens continued to report that she was depressed while White was treating her, R. 914–34, but that's consistent with the ALJ's decision, which identified Cassen's affective disorder as a severe

impairment. The fact that Cassens was depressed doesn't show by itself that she was "markedly" limited in most areas of mental functioning.

Cassens doesn't challenge the ALJ's finding that White's mental status examinations were "generally unremarkable" or that Cassens was "making progress toward her goals" during her treatment with White. R. 29. Instead, Cassens points out that White adjusted Cassen's medication, and that, during one visit, Cassens "endorse[d] suicidal ideation, but denie[d] intent or plan." R. 916. But Cassens doesn't explain the significance of those issues. Although Cassens may have had moments of struggle during her treatment, White concluded after her last session with Cassens that her "symptoms are moderately managed with the current psychotropic regimen" and that she "endorses safety," R. 933, suggesting that the medication adjustment and counseling were working.  So Cassens hasn't shown that White's treatment records support the findings that she made in the check-box form.

### 3.  Improvement with treatment

Cassens says that the record doesn't support the ALJ's finding that Cassen's mental health condition was improving. But that isn't exactly what the ALJ found. Rather, she said that Cassens's symptoms "improve with conservative treatment such that they never reached nor maintained a level of disabling." R. 32. In other words, the ALJ acknowledged that Cassens suffered from depression and anxiety, and she occasionally suffered from acute symptoms, but she was generally able to manage those symptoms with treatment. That is essentially the same conclusion that White reached, as already discussed.

Cassens says that she was *not* able to manage her depression and anxiety, citing a medical record that notes "the onset of auditory hallucinations" without any elaboration. R. 945. But Cassens's reliance of this record is misplaced for multiple reasons. First, the record

is from May 2018, which is after Cassens stopped seeing White, so it could not have any bearing on White's opinion. Second, Cassens doesn't explain how auditory hallucinations relate to depression or anxiety, which are the only two mental impairments at issue in this case. Third, none of the experts cited by the parties discuss auditory hallucinations, so the ALJ would not have had any basis for determining their significance. Fourth, even if auditory hallucinations could be evidence of an impairment, the record Cassens cites doesn't provide enough information to undermine the ALJ's finding that Cassens was managing her depression and anxiety. Cassens doesn't say what the auditory hallucinations were or whether they became a recurring problem, and she didn't mention hallucinations at all during the administrative hearing. R. 43–81. Perhaps auditory hallucinations could have been a subject of greater inquiry during the administrative proceedings, but Cassens doesn't contend that her attorney asked the ALJ to develop the record on this issue and she doesn't contend now that ALJ erred by failing to solicit an additional expert opinion or other evidence. *See Primm v. Saul,* 789 F. App'x 539, 544 (7th Cir. 2019) ("[A] claimant bears the burden of producing medical evidence.").

The ALJ's reasons for rejecting White's opinion are all supported by substantial evidence. Cassens isn't entitled to a remand on this ground.

## B.  Examining psychologist

Frodin found that Cassens had a "moderate to marked" limitation in her ability to understand, remember, and carry out simple instructions; "mild to moderate" limitation in her ability to respond appropriately to supervisors and coworkers; "moderate to marked" limitation in her ability to maintain concentration, attention, and work pace; "moderate to marked" limitation in her ability to withstand work stressors; and "moderate" limitation in adapting to changes. R. 616. The ALJ gave "little weight" to Frodin's opinion for two reasons: (1) Frodin's

findings were inconsistent with her own mental status examinations; and (2) Frodin relied heavily on Cassens's subjective complaints.

Cassens says nothing about Frodin's reliance on Cassens's subjective complaints. As for the internal inconsistencies, she says only that "[t]he ALJ apparently seems to express a greater knowledge than Dr. Frodin of what was or was not the basis for Cassens's impairments. Dr. Frodin was an expert and was in the best position to opin[e] on Cassens's limitations, not the ALJ." Dkt. 11, at 27.

Cassens doesn't explain what point she is making. Even she acknowledges that the ALJ's reasoning "may have some merit." *Id.* And it is well established that it is appropriate for an ALJ to consider an expert's internal inconsistencies when determining how much weight to give an opinion. *E.g., Gibbons v. Saul*, 801 F.3d 411, 416 (7th Cir. 2020); *Hinds v. Saul*, 799 F. App'x 396, 399 (7th Cir. 2020); *Stepp v. Colvin*, 795 F.3d 711, 719 (7th Cir. 2015). If Cassens means to contend that the ALJ didn't have the necessary expertise to determine whether Frodin's findings were inconsistent in all the ways that the ALJ described, R. 31–32, that contention fails because the state agency psychologists also identified multiple ways that Frodin's findings were internally inconsistent. R. 104 and 131. Cassens doesn't explain why the ALJ wouldn't be entitled to rely on the state agency psychologist opinions when evaluating Frodin's findings.

Cassens also says that the ALJ should have given more weight to Frodin's opinion because it was consistent with White's opinion. But two flawed opinions do not equal a good one. Cassens cites *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001), for the proposition that "the ALJ must consider the record as a whole," but *Zurawski* says only that the ALJ may not disregard evidence that undermines her conclusions. *Zurawski* doesn't say that the ALJ must give more weight to an opinion simply because it is consistent with another opinion. In this

case, the ALJ gave valid reasons for rejecting the decisions of both experts, which is all that the substantial evidence standard requires. *See Gibbons v. Saul*, 801 F. App'x 411, 415–16 (7th Cir. 2020).

In her reply brief, Cassens contends for the first time that Frodin's opinion wasn't inconsistent with her mental status examinations and that Frodin was entitled to rely on the Cassens's subjective complaints. But Cassens forfeited these arguments by failing to include them in her opening brief, *see Brown v. Colvin,* 661 F. App'x 894, 895 (7th Cir. 2016), so the court declines to consider them.

## C.  State agency psychologists

Gilyot-Montgomery and Palreddy both found that Cassens had the ability to work with certain restrictions based on her mental limitations. Although they agreed on many of Cassens's limitations, Cassens points to one difference: Gilyot-Montgomery said that Cassens "would do best w/ superficial contact w/ others in a work setting," R. 92; Palreddy said that Cassens "is able to get along with coworkers and supervisors." R. 157. Palreddy also stated that Cassens was "doing well from the mental health perspective and remains stable." R. 153. Although the ALJ placed "great weight" on both opinions, she placed "greater weight" on Palreddy's opinion "in light of the longitudinal medical evidence of record developed at [the] hearing demonstrating that the claimant's psychological symptoms are stable, generally well managed with conservative medication management and individual counseling." R. 31.

The court understands Cassens to be challenging the ALJ's handling of these opinions on two grounds: (1) the ALJ should not have relied on the opinions because they were "outdated," Dkt. 11, at 24; and (2) the ALJ failed to explain why he did not adopt Gilyot-

Montgomery's opinion that Cassens "would do best w/ superficial contact w/ others in a work setting," R. 92.

### 1. Reliance on outdated opinions

The state agency psychologists provided their opinions in June and November 2016. Cassens contends that the opinions were outdated because Cassens's mental health deteriorated in 2017 and 2018. Cassens doesn't develop this argument, but presumably she is relying on the principle that "[a]n ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018).

Cassens doesn't acknowledge the above standard, and she hasn't shown that the ALJ failed to account for "new, significant medical diagnoses." Again, Cassens relies on the changes that White made to her medication, and the reference to auditory hallucinations in one of her medical records. But the court has already explained why these developments don't undermine the ALJ's decision: White herself ultimately concluded that Cassens's mental health conditions were being managed, and the reference to auditory hallucinations was isolated and unexplained. Cassens cites no evidence that she was hospitalized after 2016 or otherwise suffered from debilitating symptoms. So Cassens hasn't shown that ALJ erred by relying on the opinions of the state agency psychologists.

### 2. Failure to explain rejection of Gilyot-Montgomery's opinion

Contrary to Cassens's assertion, the ALJ *did* explain why he was giving more weight to Palreddy's opinion than to Gilyot-Montgomery's: "the longitudinal medical evidence of record developed at [the] hearing demonstrate[s] that the claimant's psychological symptoms are stable, generally well managed with conservative medication management and individual

counseling." R. 31. Cassens doesn't acknowledge that reasoning, much less explain why it is insufficient. And Cassens doesn't cite any evidence from the record that would support a finding that she is unable to take directions from supervisors or get along with coworkers. Cassens held numerous jobs involving interactions with others, including as a cashier and a manager at a fireworks store, R. 50–57, but Cassens did not describe any difficulties she had with coworkers or supervisors. And Cassens doesn't challenge the ALJ's finding that Cassens engages in a range of social activities without problems, including church conferences and a Mary Kay party. R. 62. So the court isn't persuaded that the ALJ by failing to adopt greater restrictions on Cassens's ability to interact with others.

## D. Treatment providers vs. state agency consultants

Cassens makes one other, more general argument, which is that an ALJ may not reject the opinion of a treating physician in favor of an expert who conducted a record review, citing *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). But Cassens overstates the holding in *Gudgel*. In that case, the ALJ didn't identify any valid reasons for rejecting the opinion of the treating physician; the ALJ simply preferred the consultant's opinion without explaining why. *Id.* That is not what happened in this case. The ALJ provided valid reasons for rejecting White's opinion, and she explained why she was adopting the opinion of the state agency consultant.

"[A]n ALJ is entitled to credit the opinion of a nontreating physician over a treating physician if doing so is supported by evidence." *Primm*, 789 F. App'x at 544–45. The ALJ's decision in this case is supported by substantial evidence, so the court will affirm the decision.

ORDER

IT IS ORDERED that the decision of the commissioner is AFFIRMED and the June 25, 2020 oral argument is CANCELED. The clerk of court is directed to enter judgment in favor of the commissioner and close this case.

Entered June 18, 2020.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge